**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Scott Arbet, Respondent,

v.

Riverstone Development Group, Inc., Appellant.

Appellate Case No. 2019-000235

———————

Appeal From Pickens County
Perry H. Gravely, Circuit Court Judge

———————

Unpublished Opinion No. 2022-UP-032
Submitted December 1, 2021 – Filed February 2, 2022

———————

**AFFIRMED**

———————

Robert Mills Ariail, Jr., of Law Office of R. Mills Ariail, Jr., of Greenville, for Appellant.

Townes Boyd Johnson, III, of Townes B. Johnson III, LLC, of Greenville, for Respondent.

———————

**PER CURIAM:** In this construction dispute, Riverstone Development Group, Inc. (Riverstone) appeals the circuit court's order granting partial summary judgment to Scott Arbet. We affirm.

"No entity or individual may *practice as a contractor by performing or offering to perform contracting work for which the total cost of construction* is greater than five thousand dollars for general contracting . . . *without a license issued in accordance with this chapter*."  S.C. Code Ann. § 40-11-30 (2011) (emphases added).  "A licensee is *confined to the limitations of the licensee's license group* and license classifications or subclassifications as provided in this chapter."  S.C. Code Ann. § 40-11-270(A) (Supp. 2021) (emphasis added).  "'License group' means *the financial limitations* for bidding and performing general or mechanical construction."  S.C. Code Ann. § 40-11-20(11) (2011) (emphasis added).  Pursuant to section 40-11-260(A)(4) at the time of the Arbet contract's formation, a general contractor with a Group IV license was limited to bidding on and performing construction contracts with a total cost of construction of $750,000 or below.[1]

"An entity which does not have *a valid license* as required by this chapter *may not bring an action either at law or in equity to enforce the provisions of a contract*."  S.C. Code Ann. § 40-11-370(C) (2011) (emphases added).  In *C-Sculptures, LLC v. Brown*, our supreme court found the term "valid" to be clear and unambiguous and held a contractor who was "underlicensed" to bid on and perform work on the contract at issue did not possess a valid license pursuant to subsection 40-11-370(C).  403 S.C. 53, 57, 742 S.E2d 359, 361 (2013).

In the instant case, the construction contract provided the total construction sum was "Seven Hundred Fifty Thousand Dollars and Zero Cents ($750,000.00) with *final contract amount to be adjusted plus or minus 5%* based upon client's final selections and design changes to the Arbet Residence home plan to achieve this budget."  Similar to the contractor in *C-Sculptures*, we find Riverstone did not possess the appropriate license qualifications to perform work on the project at the time of the contract's formation.  Riverstone's license group limited it to construction projects with a maximum total cost of $750,000; the language of the contract between the parties allowed for a greater total cost of construction.[2]  *See* S.C. Code Ann. § 40-11-300(A) (2011) ("It is unlawful for an owner, a construction manager, a prime contractor, or another entity with contracting or

---

[1] "'Total cost of construction' means the actual cost incurred by the owner, all contractors, subcontractors, and other parties for labor, material, equipment, profit, and incidental expenses for the entire project.  This does not include the cost of design services unless those services are included in a construction contract."  S.C. Code Ann. § 40-11-20(23) (2011).

[2] Adding five percent to the initial construction sum would increase the cost by $37,500, raising the total cost of construction to $787,500.

hiring authority on a construction project to divide work into portions so as to avoid the financial or other requirements of this chapter as it relates to license classifications or subclassifications or license groups, or both. The total cost of construction must be used to determine the appropriate license group for a project."). Furthermore, we note section 40-11-300(B) required Riverstone to terminate its involvement with the project following the first change order, which it failed to do. *See* S.C. Code Ann. §40-11-300(B) (2011) ("An entity or individual engaging in general or mechanical construction on a project without the required license or certificate *must immediately withdraw* from the construction project and may not act as a subcontractor on that construction project." (emphasis added)). Therefore, we hold the circuit court properly found Riverstone could not bring an action seeking to enforce the contract because it did not possess a valid license for the project. *See* § 40-11-370(C) ("An entity which does not have a valid license as required by this chapter *may not bring an action either at law or in equity to enforce the provisions of a contract*." (emphasis added)); *C-Sculptures*, 403 S.C. at 56–57, 742 S.E.2d at 361 (holding a general contractor did not possess a valid license to enforce the construction contract at issue when it possessed a Group II license with a cost limitation of $100,000 and the cost of the project was $800,000). Accordingly, the circuit court did not err in granting partial summary judgment to Arbet. *See Penza v. Pendleton Station, LLC*, 404 S.C. 198, 203, 743 S.E.2d 850, 852 (Ct. App. 2013) (providing that summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law).

**AFFIRMED.**[3]

**WILLIAMS, A.C.J., MCDONALD, J., and LOCKEMY, A.J., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.